UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LAUREN M. BALMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  4:12CV620 CAS |
| | ) | (TIA) |
| CAROLYN W. COLVIN,[1] | ) | |
| ACTING COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court under 42 U.S.C. § 405(g) for judicial review of the denial of

Plaintiff's application for Disability Insurance Benefits under Title II of the Social Security Act.  The

case was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. §

636(b).

## I.  Procedural History

On September 5, 2008, Plaintiff protectively filed an application for Disability Insurance

Benefits, alleging disability beginning September 16, 2005 due to severe scoliosis, degenerative disc

disease, reconstructive back surgery, spinal stenosis, arthritis, hypertension, and acid reflux.  (Tr. 8,

52, 99-106)  The application was denied on November 7, 2008, after which Plaintiff requested a

hearing before an Administrative Law Judge ("ALJ").  (Tr. 50-56, 59-60)  On December 22, 2009,

Plaintiff testified at a hearing before the ALJ.  (Tr. 31-49)   In a decision dated May 14, 2010, the

ALJ found that Plaintiff had not been under a disability from September 16, 2005 through the date

---

[1]  Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14,
2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is
substituted for Michael J. Astrue as the Defendant in this action.

of the decision. (Tr. 8-16) The Appeals Council denied Plaintiff's request for review on February 9, 2012. (Tr. 1-3) Thus, the decision of the Appeals Council stands as the final decision of the Commissioner.

## II. Evidence Before the ALJ

At the hearing before the ALJ, Plaintiff was represented by counsel. At the outset, Plaintiff's attorney requested that the ALJ leave the record open for 30 days to submit records from Dr. Place, Plaintiff's treating physician, and Dr. Gary Sides. The attorney then presented an opening statement, indicating that Plaintiff was 48 years old with a high school education. Her medical conditions included a fusion from T-11 to L-5; depression; anxiety; irritable bowel syndrome; and cervical spine complaints. Plaintiff last performed substantial gainful activity on September 16, 2005 but had performed some part-time babysitting from that time through May 2009, when she stopped working due to complaints of pain and side effects from medication. Her attorney further stated that Plaintiff was a credible witness with restrictions that prevented her from engaging in any type of competitive employment. (Tr. 33-35)

The ALJ then questioned Plaintiff, who testified that she was 48 years old and married. She lived with her husband and son but also had a daughter attending college. Her husband was employed as a school teacher through the Mehlville School District. Plaintiff had health insurance through her husband's employment. She graduated from high school but dropped out of college. Plaintiff weighed 138 pounds and measured 5 feet 2 inches. She previously provided in-home babysitting services for friends, but testified that she presently only saw the children if they were ill or visited, usually only once or twice a month. The kids were the children of teachers, who were also Plaintiff's friends. (Tr. 35-37)

2

Plaintiff further testified that she did not believe she could perform a desk job where she primarily worked at a desk or table because sitting was very difficult and painful for even a half hour. She stated that she spent half of the day laying on a bed because of pain. Plaintiff was able to do laundry once a week. The washer and dryer were in the basement, but she was able to throw the clothes down a laundry chute. She went to the grocery store twice a week. Plaintiff could lift a gallon of milk but not a 12-pack of beer or soda or a package of kitty litter. (Tr. 37-38)

Plaintiff stated that the pain was located in her whole spine. She took 650 milligrams of Hydrocodone for pain. Dr. Sides was her family doctor, and Dr. Place was her back surgeon. Plaintiff saw Dr. Place about every six months. (Tr. 38-39)

Plaintiff's attorney then questioned her about her prior babysitting job and how her pain impacted her ability to work. Plaintiff testified that she worked during the last school year as a babysitter twice a week. She performed babysitting services three days a week during the previous school year. Plaintiff stopped babysitting because it became too difficult and caused her a considerable amount of pain. In addition, she increased the dosage of pain medication because she experienced more pain in her upper spine and neck area in addition to the normal pain in her low and mid-back area. Plaintiff limited her driving to four days a week because of her pain medication. In addition, Plaintiff stated that she previously watched two children who were ill so they could stay home and get better. She testified that holding and rocking them was very painful but that it was in their best interest for her to continue taking care of them. After they were well, Plaintiff saw Dr. Klinginsmith because her pain had worsened. (Tr. 38-41)

Plaintiff further testified that, in addition to problems with her spine, she had neck problems due to the discs shrinking and spurring. Her neck problems caused headaches and a tingling sensation

3

from her neck and shoulders, down to her hands. Plaintiff experienced headaches daily over the past year. Taking pain medication and resting helped alleviate the pain. Plaintiff stated that she lay down and rest for about a half hour on a daily basis due to headaches. In addition, she experienced numbness and tingling daily. Plaintiff testified that sometimes her neck felt like it was stuck or could not move. She could not reach over her head without pain, and she knew that surgery was the next step. Plaintiff's grip was very weak, and she was unable to open jars or pain medication bottles. With regard to her mid and low back, Plaintiff stated that her back was stiff and would not move due to the rods, screws, and cages that were fused. She was unable to bend or balance, and she experienced pain in her whole back that radiated. Plaintiff also had spasms daily, for which she took muscle relaxants and lay down for a half hour to an hour. She described the spasms as "stabbing pain or like a hot poker" that took her breath away. She experienced this pain about 10 times a day but kept taking muscle relaxants and pain medication. (Tr. 41-44)

On a daily basis, Plaintiff took about three total Hydrocodone pills, as well as muscle relaxants. The medication made her tired, constipated, and dizzy, and she had less concentration. She lay down every afternoon for at least two hours and again before bed for another two to three hours until she fell asleep. (Tr. 44-45)

In addition, Plaintiff experienced irritable bowel syndrome, which caused constipation. She drank water and regularly took laxatives. The constipation pain was sometimes unbearable. Plaintiff also experienced diarrhea after taking laxatives. Plaintiff further testified that she had been treated for anxiety and depression. She was depressed because she was tired of being in pain on a daily basis and was frustrated that her body would not allow her to do certain things. She also became nervous in stressful situations, which caused her to have tingly feet and hands and to see stars. Plaintiff tried

to be active and took a vacation to California by herself during the past year. She stated that the first day of travel was horrific due to all the sitting, and she passed out at her friend's house because she was dehydrated. While she was there, Plaintiff was more active than usual. She took pain medication and went shopping, but it hurt to walk on concrete or tile. (Tr. 45-47)

Plaintiff further testified that she saw Dr. Klinginsmith anywhere from one to four times a month for temporary pain relief. Dr. Klinginsmith provided acupuncture treatments for pain, muscle spasms, constipation, and kidney performance. Plaintiff stated that she also previously worked for Dr. Klinginsmith and that he treated her without charge. (Tr. 47-48)

In a Disability Report – Adult, Plaintiff stated that her ability to work was limited by severe scoliosis, degenerative disc disease, reconstructive back surgery, spinal stenosis, arthritis, high blood pressure, and acid reflux. She reported that she was unable to stand/walk/sit for any length of time, lift, bend, or climb up and down steps due to constant pain. She previously worked as an office assistant from 1997 to 2005. Plaintiff described her job duties as putting film through x-ray machines, taking patients to rooms, filing, hooking patients to physical therapy machine, charting, taking co-pays, answering the phone, and doing data entry. The heaviest weight she lifted was 10 pounds. (Tr. 119-122)

In a Function Report – Adult, Plaintiff stated that on a daily basis she woke up; made lunch for her husband and son; made herself breakfast; read while her medication took effect; let out the dog; went for a short walk; talked on the phone; showered; went to the store if needed; did laundry; ate lunch; washed dishes; rested and watched her soap opera; made dinner for her family; ate; watched TV; rested some more; and went to bed. She could no longer ride in the car for long periods, water ski, boat ride, go to amusement parks, snow ski, hike, walk for long periods,

balance/bend due to rods in her back, or play with her kids or friends' kids. She also had trouble sleeping because she needed to reposition herself often. She could prepare simple meals and cooked for her family about 4 times a week. She did not cook if she was having a bad day. In addition, Plaintiff was able to wash dishes, do laundry, dust, vacuum, and sweep the front porch. She needed help carrying clean clothes up the stairs. Plaintiff went outside daily and was able to walk, drive a car, and ride in a car. She could grocery shop for food and went 3 to 4 days a week. Further, Plaintiff was able to handle money. Her hobbies and interests included reading, watching TV, and talking on the phone daily. She also had lunch, talked, and walked with others at the store or at friends' houses. However, she stated that she was unable to attend social activities as often. Plaintiff reported that her conditions affected her ability to lift, squat, bend, stand, walk, sit, and stair climb. She opined that she could lift 10 pounds; never squat; bend on a very limited basis; stand for short periods; walk short distances; sit for short periods; and stair climb with pain. She could walk ½ mile before needing to rest for one to three hours. She could pay attention for two to three hours, and she could follow written and spoken instructions well. Plaintiff had no problem with authority figures. She handled stress and changes in routine "so-so", but she had no unusual behaviors or fears. (Tr. 134-41)

Plaintiff also completed a Claimant's Work Background report, which indicated that she previously worked as a babysitter in her home from 2006 to 2007. In addition, she worked for Dr. Charles Klinginsmith. Her duties included filing, developing x-rays, cleaning, and hooking up patients to electric therapy. (Tr. 154)

### III.  Medical Evidence

On May 5, 2003, Plaintiff presented to Howard Place, M.D., for evaluation of back pain and scoliosis.  Plaintiff reported that her back pain had been stable for several years but had recently worsened to a significant degree.  She was able to walk as far as she wanted but had significant pain.  Physical examination revealed excellent range of motion to flexion, extension, and side bending.  Her back was minimally tender in the lower paraspinous region and nontender over the spinous process.  After reviewing x-rays, Dr. Place diagnosed scoliosis and degenerative L1-4 curve 30 degrees.  He recommended that Plaintiff walk as much as possible, but if her pain did not improve on the activity plan, Dr. Place would then consider surgery.  (Tr. 167-69)

On July 30, 2003, Plaintiff returned to Dr. Place for a preoperative evaluation. Plaintiff was in no apparent distress but did frequently change her position from sitting to lying to standing to gain comfort.  Palpation of Plaintiff's back did not demonstrate significant tenderness other than mild tenderness in the lower lumbar spine.  Dr. Place recommended that Plaintiff undergo anterior/posterior spinal fusion with reconstruction using anterior interbody cages and posterior spinal instrumentation with fusion. (Tr. 171-73)  Plaintiff's surgery occurred on August 5, 2003. (Tr. 182)

Beginning in January 2006, Plaintiff saw Dr. Charles E. Klinginsmith, D.C., a chiropractor and her former employer, at least twice a month and sometimes once a week for treatment of back pain.  Chiropractic treatment with Dr. Klinginsmith and another chiropractor, Dr. Tjode Mickelson-DeSalme, D.C., continued through the time of the hearing. (Tr. 240-343, 365-406).

On March 6, 2006, Plaintiff presented to her primary care physician, Gary W. Sides, D.O., for complaints of swelling in her eyes. Plaintiff also reported losing 15 pounds through diet and exercise. Dr. Sides diagnosed bilateral eye swelling with borderline glaucoma, anxiety, hypertension,

and chronic lumbar pain.  (Tr. 218)

On March 31, 2006, when Plaintiff sought chiropractic treatment, she reported having neck and arm symptoms.  Medication helped with the pain, and she stated she was doing very well since the last treatments.  Dr. Klinginsmith recommended no lifting or twisting.  (Tr. 242)  By January 3, 2007, however, Plaintiff complained that her pain was an 8-10 on a 10 point pain scale after the dog jerked her hard and twisted her back.  Dr. Klinginsmith noted a guarded range of motion and antalgic posture, and he diagnosed traumatic cervical thoracic sacroiliac syndrome with muscle spasm.  He recommended light activity, heat, and a recliner.  (Tr. 301)

Plaintiff returned to Dr. Sides on November 6, 2006 for complaints of dizziness.  Dr. Sides assessed vestibular neuritis and prescribed medication.  (Tr. 219)  On November 13, 2006, Plaintiff reported two episodes of severe abdominal cramps that lasted 15 to 20 minutes, followed by diarrhea.  Dr. Sides diagnosed acute episodic irritable bowel syndrome, noting that the benign episodes of IBS were not chronic.  (Tr. 220)

On January 22, 2007, Plaintiff returned to Dr. Place because she ran out of Flexeril and had worsening symptoms as a result.  Plaintiff was able to get up from a sitting position and lying position with minimal difficulty.  She had no episodes of pain into her legs and no weakness in her lower extremities.  Dr. Place noted that radiographically, Plaintiff was doing well with fair function but required relatively constant use of muscle relaxants and Celebrex.  Dr. Place recommended that Plaintiff see Dr. Sides for continuation of her medications.  (Tr. 227)

On July 20, 2007, Plaintiff presented to Dr. Klinginsmith's office for treatment. She noted a slight improvement to her mid back pain, but stated that her daily activities were affected by her symptoms.   She had been feeling pretty good before going to Six Flags a couple days before.  The

chiropractor opined that Plaintiff's progress had been slower than expected and was limited by exacerbations caused by daily activities, particularly normal work functions. The chiropractor recommended that Plaintiff receive spinal manipulation two times a week. (Tr. 302)

On September 18, 2007, Plaintiff saw Dr. Sides for a check up, refill of medications, and lab work, as over a year had passed since she had her lab work checked. Plaintiff reported that she had been doing some new exercises that had caused a little left lower back pain. She also reported that so long as she took her medication, her pain was not nearly as bad as in the past. Dr. Sides's examination revealed some residual left lumbar scoliosis and some left paravertebral fullness, but good flexion to 80 degrees. Gross neurological exam was intact in the lower extremities. Dr. Sides assessed hypertension and chronic lumbar pain. He refilled her medications. (Tr. 221)

When Plaintiff reported to Dr. Mickelson-DeSalme on November 6, 2007, she reported that she had been on the floor frequently with the two children that she baby-sat, and her back was aching as a result. She stated that she could find no position and no time of day to relieve her symptoms. Dr. Mickelson-DeSalme noted that Plaintiff was progressing as expected and had made improvements since her last visit. (Tr. 326)

On March 11, 2008, Plaintiff underwent an upper endoscopy and colonoscopy, which was completely negative. Dr. Mohideen A. Jamaluddin suggested that Plaintiff's symptoms were related to irritable bowel syndrome and reflux disease. (Tr. 223)

Plaintiff returned to Dr. Place on September 8, 2008, for an evaluation. Dr. Place noted that it had been nearly 18 months since her last evaluation. Plaintiff reported that she felt as if she were getting more symptoms and having more problems with pain on her left side and lower back. She also stated that she needed to take more medications and recently starting acupuncture. Plaintiff

reported that she was able to function reasonably well, walking two miles per day at least five times per week. However, she had to cut down her babysitting to twice a week and still needed to rest daily. Dr. Place diagnosed mild juxta fusional spondylosis T10-T11 with vacuum disk phenomenon; component of L5-S1 spondylosis; and overall satisfactory sagittal plane alignment. Dr. Place noted no need for surgery, but recommended that Plaintiff increase Celebrex and start exercises again. He opined that Plaintiff had restrictions in terms of her ability to function, bend over, and last a full day of standing erect. (Tr. 235-36)

On September 24, 2008, Plaintiff returned to Dr. Sides and reported that she applied for disability because she was no longer able to work. She complained of back pain when going to the grocery store. She was unable to lift any weights on a regular basis and also reported occasional episodes of abdominal pain. Dr. Sides diagnosed chronic lumbar myalgia, status post spinal fusion, benign hypertension, GERD, and irritable bowel syndrome. He recommended that Plaintiff continue her medications and follow up in six months. (Tr. 355)

Plaintiff saw Dr. Place again on November 10, 2008. She stated that her back still bothered her and that acupuncture seemed to help the most. Despite trying several medications, Plaintiff reported continued back pain. Dr. Place noted that Plaintiff maintained the ability to stand erect. She had excellent quadriceps, hamstring, plantar flexion, and dorsiflexion strength, as well as no pain with torso twist. Dr. Place assessed status post lumbar reconstructive surgery with excellent arthrodesis, overall satisfactory plane alignment, and continued complaints of back pain. Plaintiff did not show any clear multiple trigger points as would be consistent with fibromyalgia, but Dr.

Place noted that her reports of pain were consistent with a fibromyalgia diagnosis. He prescribed Elavil to help the pain. (Tr. 431)

On January 12, 2009, Plaintiff returned to Dr. Place and complained of having bad days, almost severe enough to cause her to go to the emergency room. She reported increased symptoms over Christmas and problems with spasms in her back which were not helped by Flexeril. She improved on Vicodin and had resumed her exercise regimen and acupuncture. In addition, Plaintiff reported neck pain and occasional dysesthesias and tingling about the area of her neck and into her shoulders. X-rays of her cervical spine showed multilevel cervical spondylosis with degenerative change from the C3-4 disk all the way through the C6-7 disk. Dr. Place assessed improved mechanical symptoms after significant posterior fusion and multilevel cervical spondylosis. He recommended that Plaintiff continue her activities as tolerated. He also noted that he did not have the ability to complete a functional capacity evaluation. (Tr. 432)

Two days later, on January 14, 2009, Plaintiff presented to the emergency room complaining of abdominal and back pain. Plaintiff appeared in no pain distress. A CT of the abdomen revealed moderate retained stool in the colon, and Plaintiff was sent home with a diagnosis of abdominal pain. (Tr. 419-21)

On January 16, 2009, Balmer returned to Dr. Sides and reported going to the emergency room because of back pain. She noted that she was still sore in her left flank area after having spasms. She also stated that the cold caused increased pain. Dr. Sides noted increased spasm in the left lumbar area and pain in the left sacroiliac and down the left hip. However, Plaintiff had good range of motion and ambulation. Dr. Sides assessed chronic lumbar myalgia, status post lumbar fusion and rod insertion, generalized myalgia, hypokalemia, and hypertension. (Tr. 357)

Plaintiff returned to Dr. Place on July 13, 2009 and reported doing well since her last office visit, with occasional episodes where her bilateral arms felt somewhat weak. Nonetheless, Plaintiff reported that she had no problems handling small objects or with actual strength in her bilateral upper arms. She stated that she walked one mile per day without difficulty. Dr. Place recommended that Plaintiff continue activities as tolerated and return in six months. (Tr. 434)

On December 20, 2009, Dr. Sides completed a Physician Statement regarding Plaintiff's ability to work. Dr. Sides diagnosed chronic lumbar myalgia, anterior/posterior spinal reconstruction lumbar T12-L5, and lumbar degenerative joint disease, chronic. He opined that Plaintiff could work no hours; could stand for 30 minutes at one time and 60 minutes throughout the day; sit for 15 minutes at one time and not at all throughout a workday; could lift 10 pounds occasionally and five pounds frequently; should never bend, stoop, or work around dangerous equipment; could occasionally balance, perform fine manipulation bilaterally, raise both arms above shoulder level, operate a motor vehicle, and tolerate heat, cold, dust, smoke, fumes, and noise; could frequently perform gross manipulation bilaterally; and would occasionally need to elevate her legs during a workday. Dr. Sides opined that Plaintiff suffered from severe pain. (Tr. 424)

Dr. Sides also opined that Plaintiff suffered from a chronic pain syndrome and that her pain was severe, caused by chronic lumbar degenerative joint disease and severe scoliosis. Symptoms associated with pain included sleep disturbance and decreased energy. In addition, Dr. Sides opined that Plaintiff had marked restriction in activities of daily living and deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner due to pain. (Tr. 425)

Dr. Sides also wrote a letter concerning Plaintiff, noting that he had treated her since 1999 and that she suffered from lumbar back pain and chronic lumbar degenerative joint disease. Dr. Sides noted similar limitations to those marked on the Physician Statement and stated that the limitations and pain existed to prevent any gainful employment for over two years. (Tr. 426)

### IV. The ALJ's Determination

In a decision dated May 14, 2010, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2010. She had not engaged in substantial gainful activity since September 16, 2005, her alleged onset date. The ALJ further determined that Plaintiff's severe impairments included residuals of spinal fusion; degenerative joint disease of the spine; scoliosis; and pain. The ALJ assessed the medical records from Dr. Sides and Dr. Place, as well as Plaintiff's subjective complaints. The ALJ noted that Plaintiff's medically determinable impairment of anxiety did not cause more than a minimal limitation in her ability to perform the basic mental work activities and was non-severe, in accordance with the "paragraph B" criteria. (Tr. 8-12)

In addition, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. After carefully considering the entire record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform the full range of sedentary work. The ALJ weighed all symptoms to the extent they were consistent with the objective medical evidence and other evidence, including opinion evidence. The ALJ determined that, while the Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, her statements concerning the intensity, persistence, and pace were not entirely credible. The ALJ noted

Plaintiff's daily activities and the inconsistencies with her subjective complaints. Further, the ALJ took into account Plaintiff's work history, which indicated a lack of motivation to return to work activity. The ALJ also noted that Dr. Sides' opinion regarding Plaintiff's functioning was based on Plaintiff's complaints rather than objective testing. Instead, the ALJ gave more credit to Plaintiff's orthopaedic surgeon, Dr. Place, who did not find Plaintiff disabled and whose opinion was contrary to that of Dr. Sides. (Tr. 12-14)

The ALJ determined that Plaintiff was unable to perform any past relevant work. However, in light of her younger age, high school education, work experience, and RFC, the ALJ found that a significant number of jobs existed in the national economy which Plaintiff could perform. The ALJ relied on the Medical-Vocational Guidelines ("Grids") in reaching this determination. Therefore, the ALJ concluded that Plaintiff had not been under a disability from September 16, 2005 through the date of the decision. (Tr. 14-16)

## V. Legal Standards

A claimant for social security disability benefits must demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Social Security Act defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months." 20 C.F.R. § 404.1505(a).

To determine whether a claimant is disabled, the Commissioner engages in a five step evaluation process. See 20 C.F.R. § 404.1520(b)-(f). Those steps require a claimant to show: (1) that claimant is not engaged in substantial gainful activity; (2) that she has a severe impairment or combination of impairments which significantly limits her physical or mental ability to do basic work

activities; or (3) she has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) she is unable to return to her past relevant work; and (5) her impairments prevent her from doing any other work. Id.

The Court must affirm the decision of the ALJ if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.'" Cruse v. Chater, 85 F.3d 1320, 1323 (8th Cir. 1996) (quoting Oberst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993)). The Court does not re-weigh the evidence or review the record de novo. Id. at 1328 (citing Robert v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992)). Instead, even if it is possible to draw two different conclusions from the evidence, the Court must affirm the Commissioner's decision if it is supported by substantial evidence. Id. at 1320; Clark v. Chater, 75 F.3d 414, 416-17 (8th Cir. 1996).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court must review the administrative record as a whole and consider: (1) the credibility findings made by the ALJ; (2) the plaintiff's vocational factors; (3) the medical evidence from treating and consulting physicians; (4) the plaintiff's subjective complaints regarding exertional and non-exertional activities and impairments; (5) any corroboration by third parties of the plaintiff's impairments; and (6) the testimony of vocational experts when required which is based upon a proper hypothetical question that sets forth the plaintiff's impairment(s). Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992); Brand v. Secretary of Health Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

The ALJ may discount a plaintiff's subjective complaints if they are inconsistent with the evidence as a whole, but the law requires the ALJ to make express credibility determinations and set

forth the inconsistencies in the record. <u>Marciniak v. Shalala</u>, 49 F.3d 1350, 1354 (8th Cir. 1995). It is not enough that the record contain inconsistencies; the ALJ must specifically demonstrate that she considered all the evidence. <u>Id</u>. at 1354; <u>Ricketts v. Secretary of Health & Human Servs</u>., 902 F.2d 661, 664 (8th Cir. 1990).

When a plaintiff claims that the ALJ failed to properly consider subjective complaints, the duty of the Court is to ascertain whether the ALJ considered all of the evidence relevant to plaintiff's complaints under the <u>Polaski</u>[2] standards and whether the evidence so contradicts plaintiff's subjective complaints that the ALJ could discount his testimony as not credible. <u>Benskin v. Bowen</u>, 830 F.2d 878, 882 (8th Cir. 1987). If inconsistencies in the record and a lack of supporting medical evidence support the ALJ's decision, the Court will not reverse the decision simply because some evidence may support the opposite conclusion. <u>Marciniak</u>, 49 F.3d at 1354.

## IV. Discussion

In her Brief in Support of the Complaint, Plaintiff raises two arguments. First, Plaintiff asserts that the ALJ erred by failing to provide controlling weight to the well-supported opinion of the treating physician as required by Social Security Ruling ("SSR") 96-2p. Second, Plaintiff argues that the ALJ erred by failing to properly base the RFC on the substantial evidence of the record as required by SSR 96-8p. Defendant, on the other hand, contends that the ALJ properly based Plaintiff's RFC on the treatment records of Dr. Place. Further, Defendant argues that the opinion

---

[2]The <u>Polaski</u> factors include: (1) the objective medical evidence; (2) the subjective evidence of pain; (3) any precipitating or aggravating factors; (4) the claimant's daily activities; (5) the effects of any medication; and (6) the claimants functional restrictions. <u>Polaski v. Heckler</u>, 739 F.2d 1320, 1322 (8th Cir. 1984).

of Dr. Sides was not entitled to substantial weight. The Court finds that substantial evidence supports the ALJ's determination.

## A. Weight Given to Treating Physician

Plaintiff first argues that the ALJ erred by failing to give controlling weight to the opinions of Plaintiff's treating physician, Dr. Sides, as required by SSR 96-2p. Defendant maintains, however, that Dr. Sides's opinions were not entitled to substantial weight. The undersigned agrees with Defendant's argument.

"A treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight . . . provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000) (citations omitted); see also SSR 96-2P, 1996 WL 374188 (July 2, 1996) ("Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques."). The ALJ need not give controlling weight to a treating physician's opinion where the physician's treatment notes were inconsistent with the physician's RFC assessment. Goetz v. Barnhart, 182 F. App'x 625, 626 (8th Cir. 2006). Further, "[i]t is appropriate to give little weight to statements of opinion by a treating physician that consist of nothing more than vague, conclusory statements." Swarnes v. Astrue, Civ. No. 08-5025-KES, 2009 WL 454930, at *11 (D.S.D. Feb. 23, 2009) (citation omitted).

Despite Dr. Sides's opinion that Plaintiff was unable to work due to significant limitations to range of motion, constant pain, and significant activity limitations, his treatment notes did not reflect symptoms of such severity that would preclude her from performing any work. Dr. Sides performed

cursory examinations on an infrequent basis, and Plaintiff primarily sought refills of prescription pain medications. (Tr. 218-21, 355-57)  The examinations included very little or no objective testing or examination, and Dr. Sides's assessments appeared to be based primarily on Plaintiff's own subjective complaints. (Id.)  Additionally, Plaintiff did not begin to complain of back pain until 2007, when she went in for a check up and a refill of medications, and the treatment notes indicate only one examination for back pain in 2008 and another one in 2009. (Tr. 221, 355-57)  The treatment notes fail to demonstrate that Dr. Sides had sufficient knowledge of Plaintiff's impairments to formulate an opinion regarding her ability to function in the workplace. See Randolph v. Barnhart, 386F.3d 835, 840 (8th Cir. 2004) (discrediting physician's medical opinion where the physician had only met with plaintiff on three occasions); see also 20 C.F.R. § 404.1527(c)(2)(i) and 20 C.F.R. § 416.927(c)(2)(i) ("Generally, the longer a treating source has treated you and the more time you have been seen by a treating source, the more weight we will give to the source's medical opinion.").

In fact, the treatment notes mention no restrictions to Plaintiff's activities and merely prescribe medications. See Choate v. Barnhart, 457 F.3d 865, 870-71 (8th Cir. 2006) (finding that ALJ properly discredited physician's Medical Source Statement where treatment notes never mentioned restrictions or limitations to the plaintiff's activities). During her most recent appointment with Dr. Sides, Plaintiff had some spasm and pain, but she also had good range of motion and ambulation. (Tr. 357) Despite the lack of objective testing and objective findings, Dr. Sides opined that Plaintiff had a significant disability and was unable to work. However, "[a] treating physician's opinion that a claimant is disabled or cannot be gainfully employed gets no

deference because it invades the province of the Commissioner to make the ultimate disability determination." House v. Astrue, 500 F.3d 741, 745 (8th Cir. 2007).

The ALJ evaluated Dr. Sides's opinion but correctly found that the opinion was entitled to little weight because it was inconsistent with his treatment records and the other medical records thoroughly assessed by the ALJ. (Tr. 12, 14) In addition to the inconsistencies set forth above, Plaintiff's treating orthopedist, Dr. Place, noted that Plaintiff walked one to two miles a day, had excellent strength, and should continue exercises as tolerated. (Tr. 235-36, 431-34) As previously stated, the ALJ is not obligated to give controlling weight to a treating physician's opinion where that opinion is inconsistent with treatment notes and other medical evidence, and where the opinion is not supported by medically accepted clinical and laboratory data. See Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000) (citations omitted) (noting the Eighth Circuit has upheld an ALJ's decision to discount or disregard a treating physician's opinion where other medical assessments are supported by more thorough evidence or where the treating physician renders inconsistent opinions undermining the credibility of those opinions).

In addition, the ALJ noted that Plaintiff's daily activities were inconsistent with the limitations set forth by Dr. Sides and with Plaintiff's complaints of symptoms precluding any work. Plaintiff reported being able to cook, read, shower, talk on the phone, go for walks, go to the store, do laundry, wash dishes, and watch TV. Further, she took a vacation to California alone in 2009. These inconsistencies between the limitations set forth by Dr. Sides and Plaintiff's daily activities undermine Dr. Sides's opinion. See, e.g., Medhaug v. Astrue, 578 F.3d 805, 817 (8th Cir. 2009) ("[A]cts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain."). In short, the undersigned finds that the

ALJ properly gave Dr. Sides's opinions less weight in light of the inconsistencies between the conclusory opinions and Dr. Sides's treatment notes, the other medical evidence in the record, and Plaintiff's daily activities.

## B. The ALJ's RFC Determination

Plaintiff next argues that the ALJ's finding that Plaintiff was capable of the full range of sedentary work was not supported by substantial evidence in the record. Defendant asserts that the ALJ properly relied on Dr. Place's treatment records to determine Plaintiff's RFC. The undersigned agrees.

With regard to residual functional capacity, "a disability claimant has the burden to establish her RFC." Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004) (citation omitted). The ALJ determines a claimant's RFC "'based on all the relevant evidence, including medical records, observations of treating physicians and others, and [claimant's] own description of her limitations.'" Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995)). RFC is defined as the most that a claimant can still do in a work setting despite that claimant's limitations. 20 C.F.R. § 416.945(a)(1).

Here, the Defendant correctly notes that the ALJ did support the RFC determination with medical evidence and other evidence in the record. The ALJ considered Plaintiff's testimony and discussed Plaintiff's lack of credibility in light of her daily activities and lack of motivation to return to work. (Tr. 14-15) For instance, as stated above, Plaintiff was quite active on a daily basis, which demonstrated inconsistencies between these activities and an alleged inability to perform any type of work. "The issue in credibility determination is not whether the claimant actually experiences pain, but whether the claimant's symptoms are credible to the extent that they preclude all substantial

gainful activity." <u>Lewis v. Astrue</u>, No. 4:10CV1131 FRB, 2011 WL 4407728, at *20 (E.D. Mo. Sept. 22, 2011) (citing <u>Baker v. Apfel</u>, 159 F.3d 1140, 1145 (8th Cir. 1998)). "The mere fact that working may cause pain or discomfort does not mandate a finding of disability . . . ." <u>Craig v. Apfel</u>, 212 F.3d 433, 436 (8th Cir. 2000) (citation omitted). Further, Plaintiff was able to babysit on a part-time basis during the period of alleged disability, further undermining her credibility. Working, even on a part-time basis, generally demonstrates an ability to perform substantial gainful activity. <u>Goff v. Barnhart</u>, 421 F.3d 785, 792 (8th cir. 2005). Finally, the ALJ noted that Plaintiff only had 4 years of substantial gainful activity since 1988, indicating a lack of motivation to work. <u>See</u> <u>Pearsall v. Massanari</u>, 274 F.3d 1211, 1218 (8th Cir. 2001) ("A lack of work history may indicate a lack of motivation to work rather than a lack of ability.").

Further, the ALJ considered all of the medical evidence in the record and included those limitations that were credible, giving full credit to the more objective treatment notes of Dr. Place, Plaintiff's orthopedic surgeon. (Tr. 10-14) While Plaintiff argues that Dr. Place does not provide an opinion on Plaintiff's ability to function in the workplace, review of Dr. Place's treatment notes are consistent with an ability to perform sedentary work. Under 20 C.F.R. § 404.1567(a):

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.

In addition, "[a] person would not need to bend or twist and would need to stoop only occasionally to perform sedentary work." <u>Ownbey v. Shalala</u>, 5 F.3d 342, 344 (8th Cir. 1993). In his examinations of Plaintiff, Dr. Place noted that Plaintiff walked one or more miles a day, per her own reports. He also opined that Plaintiff had restrictions in bending and in standing for a full day.

However, Plaintiff had excellent strength and flexion, had no pain with torso twist, and could get up from a seated position with no pain.  (Tr. 227, 235-36, 431)  The Court finds that the ALJ did not err in assessing Plaintiff's RFC.  "The ALJ thoroughly discussed the medical records before outlining his RFC determination, which [this Court] conclude[s] is supported by substantial evidence."  Gaston v. Astrue, 276 F. App'x 536, 537 (8th Cir. 2008).  Therefore, substantial evidence supports the ALJ's RFC determination, and the decision of the Commissioner should be affirmed.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the final decision of the Commissioner denying social security benefits be **AFFIRMED**.

The parties are advised that they have fourteen (14) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).


                              /s/ Terry I. Adelman
                              UNITED STATES MAGISTRATE JUDGE

Dated this  6th  day of August, 2013.